UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ERIN ST. JOHN, ALEX ST. JOHN, E. ST. J By and through her parent/next best friend Erin St. John, N. ST. J. By and through her parent/next best friend Erin St. John, <br><br> Plaintiffs, <br><br> v. <br><br> TEAM INTERNATIONAL GROUP OF AMERICA, INC. d/b/a Kalorik, <br><br> Defendant. | No. 1:24-cv-00212-JPH-MKK |

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Erin St. John and Alex St. John suffered severe burns in front of their two minor children when the soup Erin was making ejected out of their pressure cooker. Erin, Alex, and their children brought this case against Team International Group of America d/b/a Kalorik, which made the pressure cooker. Kalorik has filed a motion for summary judgment. Dkt. [49]. For the reasons below, that motion is **DENIED**.

## I.
## Facts and Background

Because Kalorik has moved for summary judgment under Federal Rule of Civil Procedure 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009).

1

The St. Johns got a pressure cooker for Christmas in 2018 or 2019. Dkt. 52-1 at 18–19 (Erin Dep. at 45–46). Before using the pressure cooker, Erin read some pages of the User Manual and skimmed others. *Id.* at 35–37 (Dep. at 63–65). She then used the pressure cooker between ten and fifteen times with no issues. *Id.* at 43, 48 (Dep. at 71, 76). Each time, she waited ten minutes for the pressure to naturally release and then it took "[v]ery little" force for her to open the lid, generally with one hand. *Id.* at 53–54, 61 (Dep. at 81–82, 89).

On November 4, 2022, Erin started the pressure cooker like normal to make soup, and when it was done waited her usual ten minutes for it to depressurize. *Id.* at 74, 87–89 (Dep. at 119, 132–34). Erin then "switched the steam release ring" to open and pressed the "steam release button" twice. *Id.* at 89–90 (Dep. at 134–135:7). To Erin, "that indicate[d] there's no pressure left in the system because [she was] opening the valve." *Id.* at 91 (Dep. at 136). Erin tried to open the pressure cooker's lid, but the lid did not turn, which had never happened before. *Id.* at 93 (Dep. at 138). Because she had manually released the steam, she believed that the pressure cooker had no pressure in it, and the lid was merely stuck. *Id.* at 95–96 (Dep. at 140–41).

Erin then asked Alex to open the lid, telling him that "there's no pressure." *Id.* at 96 (Dep. at 141). Alex, who had not read the User Manual or used the pressure cooker before, opened the pressure cooker, which opened "pretty smoothly" with one hand. *Id.* at 103–04 (Dep. at 148–49); dkt. 49-3 at 11, (Alex Dep. at 16); dkt. 52-2 at 33 (Alex Dep. at 43). Then, the lid to the

pressure cooker "exploded up," ejecting the soup around the kitchen and onto Erin and Alex.  Dkt. 49-1 at 104, 109 (Erin Dep. at 149, 154); dkt. 52-2 at 31–32 (Alex Dep. at 41–42).  Erin and Alex suffered severe burns; their children were nearby but not physically injured.  Dkt. 52-2 at 31–32, 36–39 (Alex Dep. at 41–42, 46–49).

The pressure cooker's User Manual warned users about avoiding steam burns:

> **WARNING:** Hot steam/liquid will be ejected. Keep hands and face away from steam vents, use pot holders when removing the inner pot or touching any hot items. And never force the lid open.  The lid will only open once the pressure is released. Remove the lid by lifting it away from you to avoid being burned by the steam.

Dkt. 49-2 at 12 (emphasis in original).

The manual also contains a troubleshooting section with steps on what to do if the lid will not open:

> **If you cannot open or remove the cover:**
> - Be sure all of the pressure has been released.
> - If you still cannot open it, bring the contents of the cooker up to pressure again.
> - Release the pressure completely and try again.

*Id.* at 19.

Plaintiffs filed this case in January 2024 alleging claims for product liability, breach of express warranty, negligent infliction of emotional distress, and loss of consortium.  Dkt. 1; dkt. 12 (operative complaint).  Kalorik moved for summary judgment.  Dkt. 49.

3

## II.
## Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584.

Absent a controlling decision from the Indiana Supreme Court, the Court does its best to predict how that court would rule on the issues of law. *Mashallah, Inc. v. West Bend Mutual Insurance Co.*, 20 F.4th 311, 319 (7th Cir. 2021). In doing so, the Court may consider decisions from the Indiana Court of Appeals. *See id.*

## III.
## Analysis

The Indiana Products Liability Act ("IPLA") "governs all actions that are: (1) brought by a user or consumer; (2) against a manufacturer or seller; and (3) for physical harm caused by a product . . . regardless of the substantive legal theory or theories upon which the action is brought." *Ford Motor Co. v.*

4

*Rushford,* 868 N.E.2d 806, 809 (Ind. 2007) (citing Ind. Code § 34-20-1-1). Kalorik therefore argues, and Plaintiffs do not dispute, that all of Plaintiffs' claims are subsumed and governed by IPLA. Dkt. 50 at 12; Dkt. 53 at 17, 20; *see Robinson v. Davol Inc.,* 913 F.3d 690, 693 (7th Cir. 2019).

Under IPLA, Kalorik argues that it's entitled to summary judgment on the statutory affirmative defense of misuse because Plaintiffs improperly forced open the lid of the pressure cooker and failed to repressurize the cooker when the lid wouldn't open. Dkt. 50 at 13 (relying on Ind. Code § 34-20-6-4). Plaintiffs respond that misuse is a question of fact that must be decided by a jury, and that any misuses cannot support summary judgment because they were foreseeable by Kalorik. Dkt. 53 at 17–19, 27.

Misuse, if proven, is a complete bar to recovery:

> It is a defense to an action under this article . . . that a cause of the physical harm is a misuse of the product by the claimant or any other person not reasonably expected by the seller at the time the seller sold or otherwise conveyed the product to another party.

Ind. Code § 34-20-6-4; *see Campbell Hausfeld/Scott Fetzer Co. v. Johnson,* 109 N.E.3d 953, 956 (Ind. 2018) ("[M]isuse is a complete defense, but it has to be proven.").

To prevail on a misuse defense, the defendant must show that plaintiffs' misuse (1) caused their injuries, and (2) was not reasonably foreseeable by the seller. *Campbell Hausfeld,* 109 N.E.3d at 959. "Misuse is typically a question of fact for the jury to decide." *Id.* "However, summary judgment based on misuse is appropriate when the undisputed evidence proves that the plaintiff

5

misused the product in an unforeseeable manner," such as "when the undisputed evidence proves that plaintiff used the product in direct contravention of the product's warnings and instructions." *Id.*

Here, the pressure cooker's User Manual instructed users to "never force the lid open." Dkt. 49-2 at 12. When Erin had used the pressure cooker in the past, the lid "was fairly easy to open." Dkt. 49-1 at 46, 96–97 (Erin Dep. at 81, 141–42). Kalorik therefore suggests that Erin should have stopped and "known something was amiss" when she couldn't open the lid like usual. Dkt 54 at 4–5. But on November 4, Erin did not apply any more force than in the past, and she had never used "much force" to open the lid because she's "a small person" and "not super strong." Dkt. 49-1 at 46, 49, 96–97 (Erin Dep. at 81, 84, 141–42). Moreover, after Erin asked Alex to try to open the pressure cooker, he opened the lid "pretty smoothly" with one hand. *Id.* at 103 (Dep. at 148); dkt. 52-2 at 33 (Alex Dep. at 43)[1]. A reasonable jury could therefore find that Plaintiffs did not force open the pressure cooker in "direct contravention" of the User Manual's warning. *See Campbell*, 109 N.E.3d at 959 ("Misuse is typically a question of fact for the jury to decide.").

Kalorik next argues that Plaintiffs failed to follow the User Manual's instructions to "[b]e sure all of the pressure has been released" and to bring the pressure cooker back up to pressure "[i]f [they] cannot open or remove the

---

[1] Kalorik contends that Alex's strength allowed him to "force open" the lid, "like a wife asking her husband to open a stuck jar of pickles," dkt. 50 at 19; dkt. 54 at 10, but the designated deposition testimony leaves a triable issue of fact on at least whether the lid was stuck like the hypothetical pickle jar.

6

cover." Dkt. 54 at 10–11; dkt. 49-2 at 18. Plaintiffs have designated evidence, however, that Erin was sure the pressure had released because she waited for the natural-release time to expire and then used the manual steam release ring twice. Dkt. 49-1 at 89–90 (Erin Dep. at 134–35). And the instructions require repressurizing only after the user "cannot open or remove the cover." Dkt. 49-2 at 18. As explained above, there's designated evidence that Alex was able to open the lid "pretty smoothly," so a reasonable jury could find that the instruction to repressurize had not been triggered. Kalorik objects that Erin should not have asked her husband to open the lid after she tried. Dkt. 54 at 6. But the instructions are not so clear to entitle Kalorik to summary judgment on this designated evidence—they do not say that only one "not super strong" person should try to open the lid before repressurizing. *See* dkt. 49-2 at 18; dkt. 49-1 at 46, 49 (Erin Dep. at 81, 84). There are therefore triable issues of fact that a jury must resolve on whether Plaintiffs made sure the pressure was released and should have repressurized the pressure cooker before opening the lid. *See Campbell*, 109 N.E.3d at 959; *Nat. Gas Odorizing, Inc. v. Downs*, 685 N.E.2d 155, 161 (Ind. Ct. App. 1997).

For the same reasons, the cases that Kalorik relies on do not support summary judgment here. Those cases each involve "*undisputed* evidence prov[ing] that the plaintiff misused the product in an unforeseeable manner." *Campbell*, 109 N.E.3d at 959 (emphasis added). In *Campbell*, the plaintiff "admitted he would not have been injured had he followed the [tool's] instructions." 109 N.E.3d at 959. In *Hackney*, the plaintiff admitted that

7

turning off the wood cutter before reaching for a piece of trapped wood "would have 'obviously' prevented his accident." *Hackney v. Pendu Mfg, Inc.*, 146 N.E.3d 1016, 1020 (Ind. Ct. App. 2020). And in *Fritchley*, it was undisputed that the decedent ignored a prominent warning not to use open flame near a metal drum filled with a flammable cleaning solution when he tried to open it with a cutting torch. *Superior Oil Co., Inc. v. Labno-Fritchley*, 207 N.E.3d 456, 458, 463 (Ind. Ct. App. 2023). That type of "undisputed evidence" required for summary judgment is not present here. *Campbell*, 109 N.E.3d at 959.

Last, Kalorik argues that other potential deviations from the User Manual—such as not using oven mitts—show that Plaintiffs did not read the User Manual or could have lessened their injuries. Dkt. 50 at 19–20; dkt. 54 at 8 n.7. Kalorik does not appear to seek summary judgment on this basis, and regardless the Indiana Supreme Court has explained that "[i]f a plaintiff misuses a product but it is not the cause of the harm . . . the misuse would not serve as a complete defense." *Campbell*, 109 N.E.3d at 959. Kalorik therefore is not entitled to summary judgment. *See Hall v. Graco Inc.*, 2004 WL 2137655 at *7 (S.D. Ind. Aug. 20, 2004) (Tinder, J.) ("[A]bsent the most extreme circumstances, [the issue of misuse] should be posited to the jury . . . . [E]ven if misuse is found to have occurred, it is then up to the jury to parcel it out with any other 'fault' in rendering its verdict.").[2]

---

[2] Because there is a triable issue of fact on whether Plaintiffs misused the product, the Court does not address Plaintiffs' arguments that (1) there is a triable issue of fact whether any misuse was foreseeable to Kalorik, and (2) summary judgment should be denied due to Kalorik's failure to cite the record as required by Fed. R. Civ. P. 56(c)(1) and Local Rule 56.1(e). *See* dkt. 53 at 14–17, 27–29.

## IV.
## Conclusion

Kalorik's motion for summary judgment is **DENIED**. Dkt. [49]. Magistrate Judge Klump is asked to hold a status conference to address settlement and trial readiness.

**SO ORDERED.**

Date: 9/24/2025

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel